IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ISMAIL SHAHATA, | ) | Civ. No. 09-00231 ACK-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| W STEAK WAIKIKI, LLC, a Hawaii | ) | |
| limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**PROCEDURAL BACKGROUND**

On May 21, 2009, Ismail Shahata ("Plaintiff") filed a complaint against W Steak Waikiki, LLC ("Defendant") alleging five claims (1) Promissory Estoppel, (2) Infliction of Emotional Distress, (3) Invasion of Privacy, (4) Wrongful Discharge, and (5) Breach of Contract.

By way of a document titled "Attorney Substitution" dated October 27, 2009, and received by the Court on October 29, 2009, Plaintiff informed the Court that he had relieved his attorney, Mr. Geshell. On November 2, 2009, Mr. Geshell filed a Motion to Withdraw as Attorney for Plaintiff, which the Court granted on November 18, 2009. Magistrate Judge Kevin S. C. Chang found that Plaintiff discharged Mr. Geshell without fault in his Special Master Report Recommending that the Motion of R. Steven

Geshell for an Award of Attorney's Fees, Costs and Lien for Representing Plaintiff be Granted in Part, and Denied in Part.[1]

On March 31, 2010, Defendant filed a Motion for Summary Judgment ("Motion"). Doc. No. 61. At the same time, Defendant filed a Separate and Concise Statement of Facts in Support of the Motion for Summary Judgment ("Motion CSF"). Doc. No. 62. Attached to the Motion CSF are declarations of Shannon H. Sagum ("Sagum Decl."), Amr Ibrahim ("Ibrahim Decl."), and Jeanne Kawamoto ("Kawamoto Decl.").

On May 7, 2010, Magistrate Judge Chang held a settlement conference in this case. At this settlement conference, Plaintiff for the first time made an oral request for a continuance of the hearing on Defendant's Motion scheduled for June 14, 2010, at 10 a.m. Defendant's counsel objected to any continuance. In response, Magistrate Judge Chang indicated that any request for a continuance with respect to Defendant's Motion should be directed to the undersigned United State District Judge presiding over Defendant's Motion.

On May 12, 2010, this Court issued a Judge's Inclination indicating that the "Court [was] inclined to reject Plaintiff's oral telephonic request for a continuance; however, Plaintiff may make an appropriate motion for a continuance should

_____

[1] Magistrate Judge Chang's Special Master Report was adopted by the undersigned on January 26, 2010.

he nevertheless wish to do so."  Doc. No. 70.

On May 17, 2010, Plaintiff filed a motion for a continuance and "to enforce litigant rights."  Doc. No. 71.  On May 18, 2010, this Court denied Plaintiff's Motion for a Continuance and referred Plaintiff's Motion to Enforce Litigant Rights to Magistrate Judge Chang.  Doc. No. 73.  On May 19, 2010, Magistrate Judge Chang denied Plaintiff's Motion to Enforce Litigant Rights.  Doc. No. 74.

On May 28, 2010, Plaintiff filed a "Separate and Concise Statement of Facts in Support of Objection to Summary Judgment" ("Opposition").[2]  Doc. No. 78.

Also on May 28, 2010, Plaintiff filed an "Interlocutory Appeal Notice of Appeal from a Judgment or Order of a District Court" (Doc. No. 80) and a "Notice of Motion to Stay Pending Interlocutory Appeal" (Doc. No. 79.)  This Court denied that request on June 1, 2010, as Plaintiff sought to pursue an improper appeal.[3]  Doc. No. 81.

On June 8, 2010, Defendant filed a Reply Memorandum in

---

[2] On June 1, 2010, the Court received a mailed version of this document, to which Plaintiff had handwritten in "1st" and "Objection" on the title page, and to which Plaintiff attached a signed copy of the declaration that is included within this document.  Doc. No. 93.  For ease of reference, the Court will refer only to the document filed on May 28, 2010, as "Opposition."

[3] On June 15, 2010, the Ninth Circuit dismissed the appeal for lack of jurisdiction because the order challenged in the appeal is not a final or appealable order.  Doc. No. 98.

Support of Its Motion for Summary Judgment filed on March 31,
2010 ("Reply").  Doc. No. 94.  Attached to the Reply is an
additional declaration of Shannon Sagum ("Sagum Reply Decl.") and
Exhibits A & B.  Also on June 8, 2010, Defendant filed an Errata
to Exhibits re: Defendant W Steak Waikiki, LLC's Reply Memorandum
in Support of Its Motion for Summary Judgment filed on March 31,
2010; Declaration of Shannon H. Sagum; Exhibits A-C ("Reply
Errata").

A hearing was held on Defendant's Motion for Summary
Judgment on June 14, 2010.

## FACTUAL BACKGROUND[4/]

Defendant owns and operates Wolfgang's Steakhouse by
Wolfgang Zweiner in Waikiki ("W Steakhouse Waikiki"), which is
located in the Royal Hawaiian Center in Waikiki.  Motion CSF ¶ 1
(citing Kawamoto Decl. ¶ 2, Ibrahim Decl. ¶ 2).  There are three
other restaurants known as Wolfgang's Steakhouse by Wolfgang
Zweiner in the United States.  Id. ¶ 2 (citing Kawamoto Decl. ¶
3-6, Ibrahim Decl. ¶ 3).  These additional restaurants are
affiliated with W Steak Waikiki but are not owned by Defendant.
Id.  The W Steakhouse restaurants are known for being upscale
steakhouses intended to provide diners with a fine-dining

---

[4/] The facts as recited in this Order are for the purpose of
disposing of this Motion and are not to be construed as findings
of fact that the parties may rely on in future proceedings in
this case.

experience.  Id. ¶ 3 (citing Kawamoto Decl. ¶ 7, Ibrahim Decl. ¶ 5).  Amiro Cruz is the corporate executive chef for the W Steakhouse Restaurants.  Id. ¶ 4 (citing Kawamoto Decl. ¶ 8, Ibrahim Decl. ¶ 5).

Plaintiff emigrated to the United States from Egypt in 1984.  Since moving to the United States, Plaintiff has worked primarily in the restaurant/food-service industry, particularly as a cook.  Motion CSF ¶ 5 (citing Ex. A at 13:10-14:6, 24:6-50:5).

Although the parties disagree about who contacted whom regarding the executive chef position at W Steakhouse Waikiki, they ultimately agreed that Plaintiff would assume that position at an annual base salary of $60,000 and signed a contract to that effect.  See Motion at 4 n. 1, Compl. Ex. A, Ibrahim Declaration ¶¶ 9-10.  The parties also agreed that Defendant would pay up to $5,000 in moving expenses, the cost of a plane ticket to Hawai'i for Plaintiff, his wife, and one child, and that Defendant would provide temporary housing for Plaintiff for one month.  Id.

In early January 2009, Plaintiff traveled to New York where he worked at W Steakhouse Tribeca to prepare for his employment at W Steakhouse Waikiki.  Ibrahim Decl. ¶ 11; Ex. A at 56:21-59:9.  On January 25, 2009, Plaintiff arrived in Hawai'i by way of an airline ticket purchased and paid for by Defendant. Motion CSF Ex. A at 129:25-131:1.

On February 12, 2009, the grand opening of W Steakhouse Waikiki was held.  Ibrahim Decl. ¶ 14.  Subsequent to the opening, Defendant removed Plaintiff from the executive chef position at W Steak Waikiki.[5/]

The remainder of the facts surrounding the circumstances under which Plaintiff ceased working for Defendant are disputed as discussed herein.

After leaving W Steakhouse Waikiki, Plaintiff moved back to Virginia, where he has worked in a number of restaurants. Motion CSF Ex. A at 24:6-26:20.

## STANDARD

The purpose of summary judgment is to identify and dispose of factually unsupported claims and defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Summary judgment is therefore appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[5/] There is a dispute between the parties as to whether Plaintiff's employment was terminated, although Defendant concedes that, for purposes of this Motion, the Court may assume that Defendant terminated Plaintiff's employment.  Motion at 15. In any event, Defendant does not dispute that Plaintiff was removed from the executive chef position.  Motion at 7 ("Subsequently, Plaintiff was put in a broiler position where he was responsible for cooking the steaks.")(Citing Ibrahim Decl. ¶ 17, Ex. A at 182:17-183:13).

"A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case.  A 'genuine issue' of material fact arises if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)) (internal citation omitted).[6/]  Conversely, where the evidence could not lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323; Miller v. Glenn Miller Productions, 454 F.3d 975, 987 (9th Cir. 2006).  The moving party may do so with affirmative evidence or by "'showing'--that is pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case."  Celotex, 477 U.S. at 325.[7/]

---

[6/] Disputes as to immaterial issues of fact do "not preclude summary judgment."  Lynn v. Sheet Metal Workers' Int'l Ass'n, 804 F.2d 1472, 1483 (9th Cir. 1986).

[7/] When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial.  Miller, 454 F.3d at 987 (quoting C.A.R.

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. See Celotex, 477 U.S. 323; Matsushita Elec., 475 U.S. at 586; Cal. Arch. Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987).[8/]  The nonmoving party must instead set forth "significant probative evidence" in support of its position.  T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).  Summary judgment will thus be granted against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial.  See Celotex, 477 U.S. at 322. When evaluating a motion for summary judgment, the court must construe all evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.  See T.W.

---

Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000)).  When the nonmoving party bears the burden of proof at trial, the party moving for summary judgment may satisfy its burden with respect to the motion for summary judgment by pointing out to the court an absence of evidence from the nonmoving party.  Miller, 454 F.3d at 987.

[8/] Nor will uncorroborated allegations and "self-serving testimony" create a genuine issue of material fact.  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002); see also, T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

<u>Elec. Serv.</u>, 809 F.2d at 630-31.[9/]  Accordingly, if "reasonable minds could differ as to the import of the evidence," summary judgment will be denied.  <u>Anderson</u>, 477 U.S. at 250-51.

**<u>DISCUSSION</u>**

**I.   Plaintiff's Request for a Rule 56(f) Continuance**

Before addressing the merits of Defendant's Motion, the Court will address Plaintiff's apparent request for a Rule 56(f) continuance.  Plaintiff asserts that "Plaintiff is not a lawyer and due to the short of time [sic] the plaintiff is rushing his time to answer and the discovery has not been completed by the defendants."  Opposition at 4, Reply at 5-6.  Plaintiff also appears to argue that an audio recording and other documents are necessary for him to oppose summary judgment.  <u>See</u> Opposition at 4, <u>see also</u> Reply at 7-10.

First, the Court has already rejected Plaintiff's request for a continuance of the hearing on Defendant's Motion.  <u>See</u> Doc. Nos. 70, 73.  Second, to the extent that Plaintiff seeks to make a Fed. R. Civ. P. 56(f) ("Rule 56(f)") argument that he needs additional time for discovery before opposing summary judgment, the Court finds that Plaintiff has not adequately shown that he is unable to present facts necessary to justify his

---

[9/] At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence.  <u>Anderson</u>, 477 U.S. at 249; <u>Bator v. State of Hawaii</u>, 39 F.3d 1021, 1026 (9th Cir. 1994).

opposition and, thus, the Court rejects any request for a continuance based upon Rule 56(f).

Fed. R. Civ. P. 56(f) provides, "if a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or issue any other just order."  Fed. R. Civ. P. 56(f).

A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment.  Tatum v. City & County of S.F., 441 F.3d 1090, 1100 (9th Cir. 2006).  "Under Rule 56(f), an opposing party must make clear what information is sought and how it would preclude summary judgment."  Garrett v. City & County of S.F., 818 F.2d 1515, 1518 (9th Cir. 1987).  "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment."  Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986) (further observing that "[r]eferences in memoranda and declarations to a need for discovery do not qualify as motions under Rule 56(f)"); In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 989 (9th Cir. 1999) (finding that failing to file the

required Rule 56(f) affidavit detailing with particularity the information sought was fatal to request for further discovery); see also Tatum, 441 F.3d at 1100 (finding that an attorney declaration was insufficient to support a Rule 56(f) continuance where declaration failed to specify specific facts to be discovered or explain how a continuance would allow the party to produce evidence precluding summary judgment).  To prevail on a Rule 56(f) motion, the movant must also show diligence in previously pursuing discovery.  Germaine Music v. Universal Songs of Polygram, 130 Fed. Appx. 153, 155 (9th Cir. 2005) (citing Byrd v. Guess, 137 F.3d 1126, 1135 (9th Cir. 1998)).

Plaintiff's request here does not comport with the requirements of Rule 56(f).  In his declaration (included within his opposition), Plaintiff claims that "defendants have not completed discovery."  Opposition at 4.  Plaintiff does not submit an affidavit indicating what facts he seeks to discover and how specifically those facts would prevent summary judgment.  Indeed, he only states that the Defendant has not yet completed discovery.  Opposition at 4.  However, it is the Plaintiff, not the Defendant, who is requesting time for discovery and to oppose summary judgment.  Thus, whether the Defendant has finished completing discovery does not affect Plaintiff's request for a continuance.

Plaintiff, however, does point to an audio recording

between himself and certain employees of Defendant, which Plaintiff made after his alleged termination and which he claims will contradict the declarations submitted by Defendant in support of its Motion.  Opposition at 4.  Plaintiff does not specify how this audio recording will contradict the affidavits. Defendant argues that Plaintiff is not entitled to a continuance to obtain the audio recording because the audio recording was produced to Defendant by Plaintiff's former attorney and Plaintiff has had the opportunity to obtain a transcript of his own recording.[10/]  Reply at 6-7.  The Court agrees.

Furthermore, despite Plaintiff's insistence that the audio recording is relevant and necessary to preclude summary judgment, Plaintiff has never filed any discovery requesting a copy of the unofficial translation that Defendant has made of the audio recording.  Sagum Reply Decl. ¶ 11.  Plaintiff's failure to diligently pursue discovery weighs in favor of denying Plaintiff's request for a Rule 56(f) continuance.  See Germaine Music v. Universal Songs of Polygram, 130 Fed. Appx. 153, 155 (9th Cir. 2005) (citing Byrd v. Guess, 137 F.3d 1126, 1135 (9th Cir. 1998)).

Finally, as discussed infra, the Court finds that there

---

[10/] Further, Defendant argues that the recording has not been properly translated, the voices on the recording have not been identified, and the statements on the recording were not made under oath.  Reply at 6-7.

are material issues of fact on the breach of contract claim regardless of whether the audio recording is considered, therefore a Rule 56(f) continuance is not necessary.[11/]  See Opposition at 6-7,10,12; Reply at 6-7.

Similarly, the documents Plaintiff has requested regarding, inter alia, employee payroll records and bonus records do not warrant a Rule 56(f) continuance.  See Reply at 7-10. These documents were the subject of Plaintiff's motion to enforce the subpoena duces tecum, which Judge Chang denied and Defendant has objected to their production.  See Doc. No. 74 (holding that "[u]ntil Defendant has failed to properly respond to a validly issued discovery request by Plaintiff, the Court will not order Defendant to produce the documents/records sought by the Plaintiff); Reply Errata Ex. C.  Plaintiff has also failed to articulate how these documents would defeat summary judgment. Accordingly, Plaintiff's request for a Rule 56(f) continuance is

---

[11/] Out of an abundance of caution, at the hearing, the Court asked Defendant's counsel whether she had any objection to submitting the unofficial translation to the Court.  Defendant's counsel indicated that she had no objection "to the extent that it's viewed as what it is, which is a translation without an identification specifically of the individuals."  Tr. at 19:8-10. The Court received the unofficial translation from Defendant on Tuesday, June 15, 2010, by hand delivery.  The Court observes that the unofficial translation appears to be more similar to notes of a conversation than a direct transcription and translation.  But, in any event, the Court's ruling on Defendant's Motion is not affected by its review of the unofficial translation.  If anything, the unofficial translation, only confirms that there are issue of material fact regarding Plaintiff's breach of contract claim.

denied.

## II.  Breach of Contract Claim (Fifth Claim)

Plaintiff and Defendant signed a contract relating to Plaintiff's employment at Defendant's restaurant.  See Compl. Ex. A; Motion CSF Ex A at Ex. 6.  In the format of a letter to Plaintiff, the contract states "W Steak Waikiki, LLC would like to formally offer you the position of Executive Chef.  This Position will be located at our Honolulu restaurant."  Id.  The contract further sets forth:

> You will receive an annual base salary of $60,000, plus a full benefit package consisting of free medical, dental, vision insurance for yourself and eligible dependents (effective 30 days after your start date). . . . You will also be eligible to receive a quarterly bonus paid out in the month following the end of each quarter.  Terms and conditions of the bonus will be discussed and agreed upon at a later date.
> In order to accommodate your moving expenses, we are offering to pay the costs of you and your wife and one (1) child's airfare from Virginia to Honolulu and one (1) month of temporary housing expenses . . . .
> Upon signature of this document, you Ismail Shahata will be agreeing to a one (1) year commitment to W Steak Waikiki, LLC and to the Honolulu location. For the purpose of this contract, the one (1) year will begin once the restaurant is officially open and in full operation and will end in twelve (12) complete months.  Once you have completed one (1) year, your contract can be reviewed and extended if both the Company and employee agree.  At that time, a new contract will be written outlining any new and remaining terms.

Id.

Plaintiff alleges that Defendant breached the employment contract between the parties and that Defendant's

14

breach of the contract caused the Plaintiff damages.  Compl. ¶¶ 23-26.  Plaintiff alleges that "after Plaintiff was in Honolulu about one month and the restaurant was opened, Plaintiff was advised that he was not working out because he was not aggressive enough, so his employment was terminated right before the one-year contract was to start."  Compl. ¶ 7.  Plaintiff also argues that he is quite capable as an executive chef (Opposition at 10-11) and that his work was "completely satisfactory and excellent according to the owners and customers" (id. at 20).

    Employment contracts with no specified time period are said to be of infinite duration and such an employment contract is typically held to be terminable at the will of either party for any reason or no reason at all.  Parnar v. Americana Hotels, Inc., 65 Haw. 370, 374, 652 P.2d 625, 627 (1982).  However, parties may contract for a specific term.  Here, there are material issues of fact regarding whether the contract at issue is an employment contract for a one-year term or an at-will contract.  Although Defendant's counsel argued at the hearing that there was no one-year term because the language of the contract specifies only that Plaintiff commits to one year at W Steakhouse Waikiki, the Court finds that based on other language in the contract there are material issues of fact.  See Rough Transcript of June 14, 2010 Hearing ("Tr.") at 4:15-6:17.

    The contract provides for an annual salary, the

15

contract requires Plaintiff to commit to one year, and the contract provides that after one year, the contract can be "reviewed and extended if both the Company and employee agree." Compl. Ex. A; Motion CSF Ex A at Ex. 6.  The contract further provides for a quarterly bonus, which provides additional indication that Plaintiff's employment with Defendant was expected to last for at least some duration.

However, even assuming arguendo that there is a valid contract for a year, Defendant moves for summary judgment on Plaintiff's breach of contract claim arguing that it is a general rule of contract law that a party cannot recover for breach of contract if he fails to comply with the contract himself.  Motion at 14 (citing <u>PR Pension Fund v. Nakada</u>, 8 Haw. App. 480, 491, 809 P.2d 1139 (1991)).  In support of that argument, Defendant asserts:

> under the rule set forth in [the Restatement (Second) Contracts] §237,[12/] a material failure of an employee's performance, including defective performance will operate as a non-occurrence of a condition.  Thus, where an employee is unable to perform the job functions of a job pursuant to an employment contract, termination of the employee's employment is justified, and does not constitute a breach of contract on the part of the employer.

---

[12/] Restatement (Second) of Contracts § 237 provides, "[e]xcept as stated in § 240, it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time."

Motion at 14 (footnote added).  Defendant argues that it became obvious after the restaurant was opened that Plaintiff was not qualified to be an executive chef and, therefore, Defendant's termination of Plaintiff's employment contract was justified in light of Plaintiff's non-performance.  Consequently, Defendant argues that it is entitled to summary judgment on Plaintiff's breach of contract claim.

The Court rejects this argument.  The Court finds that there are material issues of fact regarding (1) whether the contract was for a one-year term or was at-will; (2) whether Plaintiff was in breach of the employment contact; and (3) whether or not the contract was mutually terminated (and/or whether Plaintiff agreed to a position as a line cook at an hourly rate).

Defendant asserts that as executive chef for W Steakhouse Waikiki, Plaintiff was responsible for "hiring, training, scheduling, and taking care of any problems that arose."  Motion at 5 (citing Ex. A at 115:5-116:8; Ibrahim Decl. ¶ 15).  Additionally, Defendant asserts that "Plaintiff [was] to be responsible for overall management of the kitchen, including making sure the restaurant was stocked with enough food, prepping for the dinner service, running the food line, making sure things were coordinated and tables were served completely and at the same time and handling problems as they arose."  Motion at 5-6

17

(citing Ibrahim Decl. ¶ 15, Ex. A. at 207-13-24).[13]

Attached to its Concise Statement of Facts Defendant submits excerpts of the deposition testimony of Plaintiff, a declaration by Amr Ibrahim, the general manager of W Steak Waikiki, and a declaration by Jeanne Kawamoto, the Human Resources Manager for the Hawai'i region for WDI International, Inc.

Mr. Ibrahim declares

> On the night of W Steak Waikiki's grand opening and in the days immediately following the opening, it became evident to myself and other kitchen staff and managers that Mr. Shahata was not suited for his position. Specifically, on the Sunday following the restaurant opening, it was obvious to me that Mr. Shahata was unable to control and properly supervise the kitchen staff, as an Executive Chef is expected to do.  In addition, I observed that Mr. Shahata had difficulty coordinating the orders and ensuring that meals for specific tables came out completely and at the same time.  During this period of time, Wolfgang Zwiener and Amiro Cruz expressed to me their observations and opinions that Mr. Shahata was unable to carry out the duties required of the Executive Chef position.

Ibrahim Decl. ¶ 16.  Ms. Kawamoto declares that during Mr. Shahata's employment as executive chef at W Steak Waikiki, she "observed a lack of leadership and initiative on the part of Mr. Shahata which is necessary for someone in his position.  On numerous occasions, in response to work-related questions, Mr.

---

[13] The Court observes that page 207 of the Shahata Deposition is not included in Exhibit A, which skips from page 197 to page 214, and thus the Court cannot review Plaintiff's deposition testimony on this issue.

Shahata would state 'I don't know' or 'no one told me.'  I felt
this was an inappropriate response for someone in such a
management position." Kawamoto Decl. ¶ 10.  Thus, Defendant
argues that Plaintiff was not qualified for the position of
executive chef.  Defendant further asserts that the contract was
mutually terminated and replaced by an agreement that Plaintiff
would work as a line cook for $16 per hour, subject to the
employee handbook.[14/]  See Motion at 7 ("Plaintiff was informed
that this position would pay $16 per hour and agreed to the
alternate position." (citing Ibrahim Decl. ¶ 18; Ex. A at 192:18-
194:19)).  Defendant further argues that although Plaintiff
agreed to the position as a line cook, shortly thereafter
Plaintiff stopped coming to work and never returned to work at W
Steakhouse Waikiki.  See id. (citing Ibrahim Decl. ¶ 19).

        In contrast, Plaintiff testified that on one occasion
which may have contributed to management's concern about his
performance, he had two staff members missing from the line and
thus, Plaintiff tried to fill in by cutting tomatoes for salads,
which it appears management found inappropriate.  See Motion CSF
Ex. A at 170:1-171:25.  Plaintiff further testified that it was

_____

        [14/] Defendant's counsel argued at the hearing on the Motion
that there was a verbal agreement in February 2009 that Plaintiff
had agreed to the line chef position although a letter confirming
that agreement was not sent to Plaintiff until April 7, 2009.
See Tr. at 10:18-11:23; Motion CSF Ex. 6 attached to Ex. A;
Ibrahim Decl. ¶ 19.

not his fault the line was short staffed.  Id.  Two people were
missing from the line because someone changed the schedule and
had given one person off and the other had cut himself.  Id.

Plaintiff appears to also dispute the scope of his
responsibilities.  Plaintiff asserts that

> Mr. Ibrahim assigned me to interview and hire the
> employees for the restaurant, and, to call the entire
> applicant who has submitted his/her application;
> schedule in person interview.  Simultaneously he orders
> me to organize the place and to help everyone, and he
> assumed complete control of everything and I was just a
> worker under him.  I thought this is only a temporary
> until the restaurant open and I will take my position
> as the executive chef.  About ten days later the head
> chef came to the restaurant and the owners for the
> opening, I noticed a mistreatment from the head chef
> and he started objecting to my work.  I complained to
> Mr. Ibrahim and his respond [sic] was that the head
> chef is in charged [sic] until the opening.  In this
> period they hired another person for the kitchen to be
> my supervisor name [BJ] and I was ordered to train him
> in everything I knew in the kitchen including my
> specialties.  Then Mr. [BJ] started acting as if he is
> everything and I am nothing, and when I objected I was
> told that the company had hired him because he worked
> with them for many years and that he is only going to
> be assistance [sic].  But in reality I became his
> assistance [sic] and he [BJ] my supervisor.

Opposition 18-19 (alteration "[BJ]" appears in original).

Plaintiff further specifically disputes that it was his
responsibility to get food out of the kitchen on time.
Plaintiff asserts that there was a waiter who had been brought in
from New York whose responsibility it was to expedite food

service for the tables.  Opposition at 7-8.[15/]  Plaintiff argues that he was ordered to do that waiter's job, a job for which he had no training and which involved a computer system that he was not familiar with.  Id.

Plaintiff asserts that he is quite capable as an executive chef (Opposition at 10-11), that his work was "completely satisfactory and excellent according to the owners and customers" (id. at 20) and that the head chef took over many of his duties (id. at 18-19).  Finally, Plaintiff does not admit to ever accepting the line cook job.  The Court observes that the deposition testimony of Plaintiff that Defendant cites in support of its assertion that "Plaintiff was informed that this position would pay $16 per hour and agreed to the alternate position" (Motion at 7 (citing Ex. A at 192:18-194:19)) does not appear to show Mr. Shahata's alleged agreement to the position as a line cook.  Additionally, Plaintiff directly testified that he did not agree to the line cook position in his testimony immediately following the portion cited by Defendant.  Defendant's counsel asked Plaintiff "[d]id you ever make any attempts to take the line cook position at W Steak?" and Plaintiff answered "[n]o." Motion CSF Ex. A at 195:17-19.

---

[15/] Although portions of Plaintiff's Opposition, which includes his declaration, do not comport with the Local Rules (see Reply at 2-4), portions of it are based upon Plaintiff's personal knowledge and, as Plaintiff is proceeding pro se, the Court will consider those statements.

These conflicting positions demonstrate that Defendant has not established by undisputed facts that it is entitled to summary judgment.  At the summary judgment stage, the court may not make credibility assessments or weigh conflicting evidence, therefore, the Court finds that there are questions of fact and summary judgment on Plaintiff's breach of contract claim is not appropriate.  See Anderson, 477 U.S. at 249; Bator v. State of Hawaii, 39 F.3d 1021, 1026 (9th Cir. 1994).

## III. Promissory Estoppel Claim (First Claim)

Defendant argues that the Court should dismiss Plaintiff's claim for promissory estoppel because the alleged promises were properly subsumed as the subject of an employment contract between the parties.  Motion at 9-12; Reply at 10-11. Defendant further argues that "it is well established that where the parties do not dispute the existence of a contract that covered the alleged promises, summary judgment is appropriate as to a promissory estoppel claim."  Motion at 10 (citing inter alia Satellite Tracking of People, LLC v. G4s PLC, No. 3:08-cv-0126, 2009 U.S. Dist. Lexis 83466, *18-19 (M.D. Tenn. Sept. 14, 2009); Response Acquisition LLC v. United States Steel Corp., No. 2:05-cv-423, 2008 U.S. Dist. Lexis 87962, *18-19 (N.D. Ind. Oct. 28, 2008); Moon v. SCO Pool Corp., No 05-70228, 2007 U.S. Dist. Lexis 710, *12 (E.D. Mich. Jan. 28, 2007)).

Although, none of the cases cited by Defendant are

binding precedent upon this Court, Hawai'i law has approved the longstanding principle that equitable remedies are only available when legal remedies are inadequate.  See Porter v. Hu, 116 Hawai'i 42, 55, 169 P.3d 994, 1007 (Haw. App. 2007); AAA Hawaii, LLC v. Hawaii Insurance Consultants, LTD, No. 08-00299 DAE-BMK, 2008 WL 4907976 (D. Haw. Nov. 12, 2008).  Thus, when an express contract exists between the parties concerning the same subject matter, equitable remedies are not available.  Id.  Promissory estoppel is an equitable remedy.  See Gonsalves v Nissan Motor Corporation in Hawai'i, Ltd., 100 Hawaii 149, 58 P.3d 1196 (Haw. 2002) (explaining that a claim for promissory estoppel may arise as an application of the general principle of equitable estoppel); 3139 Properties, LLC v. First Specialty Ins. Corp., No 06—0619 SOM-LEK, 2007 WL 1701922, *8 n.1 (D. Haw. June 08, 2007) (observing that promissory estoppel is an equitable claim).

Here, Plaintiff's promissory estoppel claim asserts inter alia that he was offered the position of executive chef (Compl. ¶ 2), he signed a contract under which he was promised a $60,000 per year position, plus a bonus, medical insurance, and $5,000 to move his belongings and family to Honolulu (Compl. ¶ 5), and that Defendant "promised Plaintiff that he would be paid under the terms and conditions of his employment contract" (Compl. ¶ 8).  These allegations all appear to be based upon the employment contract, under which both Plaintiff and Defendant

commenced performance.   However, because the Court has found that there are material issues of fact regarding whether the employment contract is for a one-year term, the Court likewise finds that there are issues of material fact regarding Plaintiff's promissory estoppel claim.   In the event that the employment contract is not found to state a one-year term, the contract or other statements by Defendant may be sufficient for Plaintiff to establish a promissory estoppel claim.[16]

          The four elements of promissory estoppel are (1) there must be a promise; (2) the promisor must, at the time he or she made the promise, foresee that the promisee would rely upon the promise (foreseeability); (3) the promisee does in fact rely upon the promisor's promise; and (4) enforcement of the promise is necessary to avoid injustice.   Gonsalves, 100 Hawaii at 164, 58 P.3d at 1211.   The Hawai'i Supreme Court has defined a "promise" as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been made."   Id.

          Hawai'i courts have considered promissory estoppel claims in the at-will employment context.   See id.   In Gonsalves,

---

          [16] Plaintiff's argument that "[t]he breach of contract by the employer in effect wipes out the contract so the notion that the defendant fulfilled his obligation under the contract is false and the plaintiff [sic] claim for promissory estoppels [sic] did not fail" is simply incorrect.   Opposition at 14-15. The alleged breach does not "wipe out" the contract, but rather gives Plaintiff the right to sue for breach of contract.

the Hawai'i Supreme Court explained:

> [Defendant] avers that the promissory estoppel claim,
> as recognized in Hawai'i, only applies to a definite
> promise of future rather than continued employment.
> But this court in <u>Ravelo</u> did not limit application of
> the doctrine of promissory estoppel to only offers of
> new employment.  Rather, this court emphasized that
> where the elements of a promissory estoppel have been
> satisfied-whether in the context of new employment or
> continued employment-a promissory estoppel claim can be
> maintained.  As this court has explained, the essence
> of promissory estoppel is not the precise nature of the
> promise, but rather "detrimental reliance on a
> promise."  <u>Ravelo</u>, 66 Haw. at 199, 658 P.2d at 887;
> <u>accord</u> <u>Morishige v. Spencecliff Corporation</u>, 720
> F.Supp. 829, 836 (D. Haw. 1989) ("This court can find
> no rational basis for distinguishing promises for new
> employment and promises for continued job security
> provided the requisite elements of [a promissory
> estoppel claim] are satisfied.").

<u>Id.</u> n. 12.  The court in <u>Morishige</u> rejected the argument that

"the Hawaii Supreme Court has not recognized a cause of action

based on promissory estoppel for continuing employment in an 'at-

will' situation and therefore [Defendants were] entitled to

judgment as a matter of law."  <u>Morishige</u> 720 F. Supp. at 835-36.

Accordingly, if the elements of promissory estoppel are met, a

Plaintiff may recover in an at-will employment context.

The Court rejects Defendant's argument that "[e]ven if

Plaintiff is permitted to assert a claim of promissory estoppel,

his claim fails because Defendant fulfilled its promise to employ

Plaintiff."  Motion at 11.  The issue is not whether Defendant

promised to employ Plaintiff at all but whether Defendant

promised to employ Plaintiff for one year.  Because the Court

25

finds there are material issues of fact relating to this issue,
Defendant's Motion is denied with regard to Plaintiff's
promissory estoppel claim.

## IV. Infliction of Emotional Distress (Second Claim)

Plaintiff asserts the "acts of the Defendant and its
employees either intentionally and/or negligently inflicted
emotional distress upon the Plaintiff."  Compl. ¶ 15.

A.    <u>Negligent Infliction of Emotional Distress</u>

The Hawai'i Supreme Court has determined that

> a plaintiff may recover for [NIED], absent any physical
> manifestation of his or her psychological injury or
> actual physical presence within a zone of danger, where
> a reasonable person, normally constituted, would be
> unable to adequately cope with the mental
> stress engendered by the circumstances of the case. . . .
> Thus, an NIED claim is nothing more than a negligence
> claim in which the alleged actual injury is wholly
> psychic and is analyzed utilizing ordinary negligence
> principles.
>       Further, this court has 'consistently held, as a
> general matter, that the plaintiff must establish some
> predicate injury either to property or to another
> person in order himself or herself to recover for
> [NIED].'

<u>Kaho'ohanohano v. Dep't of Human Serv.</u>, 117 Hawai'i 262, 306-07,
178 P.3d 538, 582-83 (2008) (citing <u>Doe Parents No. 1 v. Dept. of
Educ.</u>, 100 Hawai'i 34, 69, 58 P.3d 545, 580 (2002)) (alteration
in original) (internal citations omitted).  Although the general
rule is that there must be a physical injury to someone, the
Hawai'i Supreme Court has carved out exceptions to that general
rule in certain cases that present "unique circumstances, which

provide the requisite assurance that plaintiff's psychological distress is trustworthy and genuine." Doe Parents No. 1, 100 Hawai'i at 69-70, 58 P. 2d at 580-81 (explaining "the law as it currently stands in Hawai'i is that an NIED claimant must establish, incident to his or her burden of proving actual injury (i.e., the fourth element of a generic negligence claim), that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else.")(internal citations omitted, emphasis in original); see also Kaho'ohanohano, 117 Hawai'i at 308, 178 P.3d at 538 (holding that "to recover for NIED, [plaintiff] was required to establish some predicate injury to property or to another person; his physical presence and witnessing of [that] injury is not required.")

Such an exception was found in Doe Parents No. 1 where the Hawai'i Supreme Court held that, even assuming arguendo that molestation did not constitute the requisite physical injury, where a teacher who was accused of child molestation was reinstated and then molested a child, the child and parents' psychological trauma involved circumstances that guaranteed its genuineness and seriousness such that they had a claim for NIED. Id. The Hawai'i Supreme Court has also found exceptions to the general rule requiring a physical injury to someone where a plaintiff alleged actual exposure to HIV-positive blood and where the mishandling of corpses is involved. Id. (citing John & Jane

Roes, 1-100 v. FHP, Inc., 91 Hawai'i 470, 476-77, 985 P.2d 661,

667-68 (1999); Guth v. Freeland, 96 Hawai'i 147, 154-55, 28 P.3d

982, 989-90 (2001)).   The Court finds that neither of these

exceptions are applicable to the facts in this case.

Accordingly, Plaintiff must establish a predicate physical injury

to someone in order to recover for NIED.

> 1.   Defendant is Entitled to Summary Judgment Because
>      Plaintiff Has Not Established a Predicate Physical
>      Injury

Defendant is entitled to summary judgment on

Plaintiff's NIED claim because the evidence submitted by both

parties does not show that Plaintiff or anyone else suffered a

predicate physical injury.   Plaintiff claims that he has back

problems, his left leg doesn't move fast and his stomach bothers

him.   Motion at 19 n. 10; Motion CSF Ex. A at 229:25-231:22.

However, Plaintiff did not see a doctor for these ailments, has

not established these ailments were caused by Defendant's

conduct, and testified that they were preexisting conditions.

Id.   Accordingly, because Plaintiff has not established any

physical injury to himself or another person, the Defendant is

entitled to summary judgment on Plaintiff's NIED claim.

Furthermore, even were there a predicate physical

injury, Plaintiff has not established any severe mental distress.

Plaintiff's allegations describe general concerns for one's

financial state that may result from any termination.   Motion CSF

Ex. A at 231:9-21.  He also describes being stressed and feeling nervous, both of which a normal person reasonably constituted could handle.  <u>Id.</u> at 222:8-231:22.  Thus, the failure to establish severe mental distress also causes Plaintiff's NIED claim to fail.

      2.    <u>Plaintiff's NIED Claim Is Also Barred to the Extent it is Based Upon a Breach of Contract</u>

Second, to the extent Plaintiff's claim for emotional distress arises out of Defendant's alleged breach of the employment contract, such a claim is barred because the parties did not bargain for such damages and the nature of the contract does not clearly indicate that such damages were within the contemplation of the parties.  <u>See</u> Motion at 19-20.  "[D]amages for emotional distress will rarely, if ever, be recoverable for breaches of an employment contract, where the parties did not bargain for such damages or where the nature of the contract does not clearly indicate that such damages were within the contemplation of the parties.  <u>Francis v. Lee Enterprises, Inc.</u>, 89 Hawai'i 234, 242, 971 P.2d 707, 715 (1999).

The Hawai'i Supreme Court has explained, however, that courts may still award damages for emotional distress arising out of a breach of contract in two "exceptional situations."  <u>Id.</u> at 240, 971 P.2d 713.  The first situation involves emotional distress accompanied by a bodily injury, although as the court explains, such an action "may nearly always be regarded as one in

tort." <u>Id.</u>  The Hawai'i Supreme Court cites medical malpractice cases growing out of relationships and duties that originate in contract as an example of this type of case.  <u>Id.</u>  The second exception involves a contract of a kind such that serious emotional disturbance is a particularly foreseeable result of a breach.  <u>Id.</u>  For example, a breach of a promise to marry or a contract for the preparation of a body for burial.  <u>Id.</u>

Because there is a contract here and it is silent as to damages based upon emotional distress, it does not appear the parties bargained for such damages.  Therefore, the general rule that damages for emotional distress are not recoverable is applicable.  The Court further finds that neither of the exceptions discussed above apply here.  As discussed <u>supra</u>, Plaintiff has not established any physical injury and an employment contract is not a contract such that emotional disturbance is a particularly foreseeable result of a breach. Indeed, the court in <u>Francis</u> noted that "contracts for employment differ materially from the contracts for marriage and burial services [discussed earlier in its opinion], where courts have historically deemed damages for emotional distress to be within the contemplation or expectation of the parties."  <u>Id.</u> at 241, 971 P.2d at 714.[17]

---

[17]  The Court observes that Plaintiff asserts a promissory estoppel claim, which may be barred by this exception as well. Promissory estoppel is a quasi-contractual remedy.  <u>See</u>

3.    Defendant is Entitled to Summary Judgment on
      Plaintiff's NIED Claim Because That Claim is
      Barred by the Workers' Compensation Statute

     Third, the Court finds that Plaintiff's negligent

infliction of emotional distress claim is barred by the Workers'

Compensation Statute, which is his exclusive remedy as to a claim

for negligent infliction of emotional distress.   The Hawai'i

Workers' Compensation Statute provides that

     The rights and remedies herein granted to an employee
     or the employee's dependents on account of a work
     injury suffered by the employee shall exclude all other
     liability of the employer to the employee . . . at
     common law or otherwise, on account of the injury,

_____

Restatement (Second) of Contracts § 90 (setting forth the
elements of promissory estoppel); 3139 Properties, 2007 WL
1701922 at *8 n.1 (holding that a promissory estoppel claim is a
contract-based claim which did not trigger the insurer's duty to
defend) (citing CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975
(D. Haw. 1999) ("Breaches of agreements or contracts (or related
promissory estoppel claims) were alleged.  These contract, or
contract-like, claims are not covered [and do not trigger a duty
to defend].")).
     The Court in Francis explained that claims for
emotional distress arising out of breach of contract were
generally barred because they are not anticipated by the parties
and because of the differing social policies between contract and
tort law:
     The distinction between tort and contract law is well
     established in common law, and distinct objectives
     underlie the remedies created in each area.  'In
     construing a contract, a court's principal objective is
     to ascertain and effectuate the intention of the
     parties[,]' whereas, tort law is primarily designed to
     vindicate social policy.
Id. at 239, 971 P.2d at 712 (internal citations and emphasis
omitted, alterations in original).  This reasoning may similarly
apply here to bar an NIED claim based upon a quasi-contractual
promissory estoppel claim, however, this Court need not (and does
not) decide that issue as there are multiple other bases upon
which Plaintiff's NIED claim fails.

31

except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

H.R.S. § 386-5.  In <u>Kamaka v. Goodsill Anderson Quinn & Stifel</u>, the Hawai'i Supreme Court interpreted this provision to bar any civil claims for negligent infliction of emotional distress not arising out of sexual harassment or sexual assault.  117 Hawai'i 92, 109, 176 P.3d 91, 108 (Haw. 2008).  An exception to the worker's compensation statute is the "dual persona theory," which provides that "an employer may be regarded as a third party and thus be subject to suit, if the employer's liability to the injured employee derives from a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person."  <u>Id.</u> (citing <u>Barrett v. Rodgers</u>, 408 Mass. 614, 562 N.E.2d 480, 482 (1990)).

The Court finds that the dual persona exception is not applicable here.

B.   <u>Intentional Infliction of Emotional Distress</u>

In order to prove the tort of intentional infliction of emotion distress under Hawai'i law, Plaintiff must show: (1) the act that caused the harm was intentional or reckless; (2) the act was outrageous; and (3) the act caused extreme emotional distress to another.  <u>Young v. Allstate Ins. Co.</u>, 119 Hawai'i 403, 429, 198 P.3d 666, 692 (2008).  The Supreme Court of Hawai'i has held

that the tort of intentional infliction of emotional distress "requires conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." Hac v. Univ. of Hawai'i, 102 Hawai'i 92, 106, 73 P.3d 46, 60 (2003) (citing Tibke v. McDougall, 479 N.W.2d 898, 907 (S.D. 1992)).  An outrageous act is one such that upon reading Plaintiff's complaint "average members of our community might indeed exclaim, 'Outrageous.'"  See Young, 119 Hawai'i at 429-30, 198 P.3d 692-93.

       In one case in an employment context, the Hawai'i Supreme Court held that even though the plaintiff there claimed conduct involving shouting and abusive behavior by the plaintiff's boss, such remarks were not outrageous or beyond the bounds of all decency.  Shoppe v. Gucci Am., 94 Hawai'i 368, 387, 14 P.3d 1049, 1068 (2000).

       The Court finds that Defendant is entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim for reasons similar to the NIED claim.  Plaintiff has not shown any physical injury or severe emotional distress. In addition, Plaintiff has not shown any "outrageous" conduct by the defendant.  At worst, Defendant fired him without cause and attributed blame to him for an incident which was not his fault. Even if these facts were to be proven, the Court finds this would

not constitute outrageous behavior.

## V.   Invasion of Privacy (Third Claim)

Plaintiff alleges that "Defendant, by and through its agents and employees, invaded the privacy of the Plaintiff by placing Plaintiff in false light when his employment was terminated."  Compl. ¶ 18.

In general there are four theories for a claim for invasion of privacy: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to the other's private life; and (4) false light.  Chapan v. Journal Concepts, Inc., 528 F. Supp. 2d 1081, 1099 (D. Haw. 2007) (citing the Restatement (Second) of Torts § 652).  Under the Restatement (Second) of Torts § 652E, which has been adopted by Hawai'i, the tort of false light is defined as follows:

> One who gives publicity to a matter concerning another that places the other before the public in a false light is subject to liability to the other for invasion of his privacy, if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed.

See Chung v. McCabe Hamilton & Renny Co., Ltd., 109 Hawai'i 520, 534 n.18, 128 P.3d 833, 847 (2006).

According to Plaintiff's deposition testimony, his claim for false light invasion of privacy is predicated on his

belief that he was blamed for the situation that occurred in the kitchen at W Steakhouse Waikiki the Sunday after it opened.  See Motion at 17; Motion CSF Ex. A at 231:23-233:9.  However, Plaintiff also testified that he was not aware of anyone else who was told that Plaintiff was to blame for the situation that occurred on the Sunday after the restaurant opened.  Motion at 17; Motion CSF Ex. A at 233:10-234:3.  The Court therefore grants Defendant summary judgment on Plaintiff's false light claim.  The Plaintiff cannot show that he was placed in a false light because he has not shown that there was any publication.  Additionally, Plaintiff has not shown that Defendant acted in reckless disregard as to the falsity of the publicized matter because there was no publication.

## VI.  Wrongful Termination Claim (Fourth Claim)

Under the heading "Fourth Claim - Wrongful Discharge" Plaintiff alleges that "Defendant, by and through its agents and employees, violated a clear mandate of public policy contained in the doctrine of promissory estoppel when Plaintiff's employment with Defendant was terminated."  Compl. ¶ 21.

Even where an at-will employment contract is at issue, which is terminable at the will of either party for any reason or no reason at all, an employer may be liable for wrongful discharge if its discharge of an employee violates a clear public policy.  Parnar v. Americana Hotels, Inc., 65 Haw. 370, 377, 652

P.2d 625, 630 (Haw. 1982).  As there are material issues of fact regarding whether there is a term contract or an at-will contract here, the Court will examine whether the discharge contravenes the letter or purpose of a constitutional, statutory, or regulatory provision.  See id.  Because of the "somewhat vague meaning of the term 'public policy,'" a claim under Parnar further requires a violation of a "clearly defined policy."  Id. at 379, 652 P.2d at 630-31; see also Takaki v. Allied Machinery Corp., 87 Hawai'i 57, 63, 951 P.2d 507, 513 (Haw. App. 1998) (holding that Parnar only applies where a "'clear' public policy is involved").

Wrongful termination claims are usually only raised in a narrow class of cases where the claim is necessary to effectuate the public policy at stake.  Griffin v. Jtsi, Inc., 654 F. Supp. 2d 1122, 1139-40 (D. Haw. 2008).  This necessity usually arises only where a statutory or other policy does not itself provide for a remedy to enforce the policy.  Id.

In his Opposition, Plaintiff asserts that "a wrongful discharge did take place and did violate public policy." Opposition at 15.  In his Complaint, Plaintiff claims that "Defendant, by and through its agents and employees, violated a clear mandate of public policy contained in the doctrine of promissory estoppel when Plaintiff's employment with Defendant was terminated."  Compl. ¶ 21.

36

Wrongful termination claims have been permitted in circumstances where an employee may have been terminated for providing truthful testimony to investigators regarding an employer's potential antitrust violations and where an employee refused to perjure himself before a legislative committee. See Parnar, 65 Haw. at 378, 652 P.2d at 630 (court found a claim where plaintiff argued that public policy is violated by the discharge of an employee who gives truthful information about an employer's possible antitrust violation) (citing the "landmark case on the public policy exception," Peterman v. International Brotherhood of Teamsters, 174 Cal. App.2d 184, 344 P.2d 25 (1959), in which the plaintiff alleged he was discharged for failing to commit perjury before a legislative committee, contrary to his employer's instructions.)

As the Defendant correctly argues, here Plaintiff cannot convert his equitable claim for promissory estoppel into a tort claim by alleging a Parnar wrongful discharge claim. Plaintiff has not alleged that he was fired for engaging in any conduct comparable to the conduct of the plaintiffs in Parnar and Peterman, nor has he identified a public policy that would be promoted by allowing him to maintain a wrongful discharge claim. Thus, the Court grants Defendant summary judgment on Plaintiff's wrongful discharge claim.

37

## VII. Plaintiff's Request for Punitive Damages

Plaintiff seeks special, general, and punitive damages. Compl. at 7.

Under Hawai'i law, in a breach of employment case, punitive damages will never be recoverable absent conduct that violates a duty independently recognized by principles of tort law.  See Lee Enterprises, Inc, 89 Haw. at 242, 971 P. 2d at 715. The Hawai'i Supreme Court has explained the general standard for punitive damages as follows:

> In order to recover punitive damages, 'the plaintiff must prove by clear and convincing evidence that the defendant has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.'

Ass'n of Apartment Owners v. Venture 15, Inc., 115 Hawai'i 232, 297, 167 P.3d 225, 290 (2007) (quoting Masaki v. General Motors Corp., 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989)) (brackets omitted). "'[P]unitive damages are not awarded for mere inadvertence, mistake, or errors of judgment.'" Id. (quoting Masaki, 71 Haw. at 7, 780 P.2d at 571) (emphasis omitted); Pancakes of Hawaii, Inc. v. Pomare Properties Corp., 85 Hawai'i 286, 293, 944 P.2d 83, 90 (Haw. App. 1997) ("[N]either willful misconduct nor gross negligence are synonymous with ordinary negligence.").

Plaintiff here has not demonstrated any evidence which

tends to show wanton or oppressive behavior or gross negligence on the part of the Defendant.  Plaintiff's bare argument that "defendant [maliciously] lured the plaintiff to change his employment and move to Honolulu and then, after he worked for about one month, fired him and then called him to return to work on an hourly basis, trying to avoid paying him under his one-year contract signed January 26, 2009" is insufficient.[18/]  Opposition at 6.  What Plaintiff states may be the basis for his breach of contract claim, but such conduct does not rise to the level of wanton or oppressive behavior or gross negligence to independently entitle him to punitive damages.

## VIII.    Plaintiff's Failure to Mitigate Damages

Defendant requests that, in the event any of Plaintiff's claims survive its Motion, the Court grant Defendant summary judgment and limit Plaintiff's damages based on his failure to mitigate his damages.  Motion at 23.

---

[18/] The Court also rejects the bare allegations of fraud which Plaintiff makes for the first time in his Opposition. Opposition at 26-27, 34.  Such a claim cannot be made for the first time in opposition to a summary judgment motion.  See Pickern v. Pier 1 Imports (U.S.), Inc., 457 F. 3d 963, 968-69 (9th Cir. 2006) (affirming District Court's refusal to consider new allegations in response to motion for summary judgment where the new allegations were not part of the original complaint and plaintiff had not moved to amend the original complaint). Moreover, nor can such a claim be made five months after the deadline to amend the pleadings.  See Doc. No. 17 (Rule 16 Scheduling Order setting January 15, 2010, as the date by which to file all motions to join additional parties or amend the pleadings).

The Court rejects Defendant's argument and denies summary judgment on this issue.  It is well established that, whether in contract or in tort, a plaintiff has a duty to make every reasonable effort to mitigate his damages.  See Malani v. Clapp, 56 Haw. 507, 517, 542 P.2d 1265, 1271 (1975).  Defendant admits that it has the burden of showing that mitigation is possible.  Motion at 24.  Defendant, however, argues that it has established mitigation was possible because Plaintiff was offered an alternate position as a line cook the day after his alleged termination.  Id.  Plaintiff does acknowledge that he was offered the position as a line cook, but he denies ever accepting it. Motion CSF Ex. A at 195:17-19.  However, this refusal does not establish a failure to mitigate.

As Defendant acknowledges, an employee is not obligated to accept a position that is not consonant with his particular skills, background, or experiences.  Motion at 24 (citing Sellers v. Delgado Community College, 839 F.2d 1132 (5th Cir. 1998)); see also Vieira v. Robert's Hawaii Tours, Inc., 2 Haw. App. 237, 630 P.2d 120 (Haw. App. 1981) (explaining the general rule that the employee need not accept a different or inferior job for purposes of mitigation).  The Court finds that the position as a line cook is a different or inferior job such that Plaintiff was not required to accept it.  The two jobs have very different compensation structures and responsibilities - one is a salaried

management position and one is an hourly wage position. Accordingly, the Court denies Defendant's request for summary judgment limiting Plaintiff's damages based upon his alleged failure to mitigate.

### CONCLUSION

For the foregoing reasons, the Court (1) DENIES Defendant's motion for summary judgment with respect to Plaintiff's breach of contract and promissory estoppel claims and Defendant's request to limit Plaintiff's damages based on a failure to mitigate as a result of Plaintiff's refusal to accept the line cook position at W Steakhouse Waikiki and (2) GRANTS Defendant's motion for summary judgment with respect to all other claims in the complaint as well as Defendant's request for summary judgment that punitive damages are not available here. Therefore, the only claims remaining for trial are the breach of contract and promissory estoppel claims.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, June 25, 2010.



_____
Alan C. Kay
Sr. United States District Judge

Shahata v. W Steak Waikiki, Civ. No. 09-00231 ACK-KSC: Order Granting in Part and Denying in Part Defendant's Motion for Summary Judgment.